A COMPLAINT UNDER THE CIVIL RIGHTS ACT,
42 U.S.C. §1983

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Anthony Mitchell         )
_____  )      **03-20912**
_____  )      CIV-UNGARO-BENAGES
_____  )              MAGISTRATE JUDGE
_____  )                      WHITE
(Enter above the full name of the
plaintiff or plaintiffs in this
action.)
                         )
             v.          )
                         )
Ronald Scott Lowy        )
_____  )
_____  )
_____  )
(Enter above the full name of the
defendant or defendants in this
action.)

Instructions for Filing Complaint by Prisoners
Under the Civil Rights Act, 42 U.S.C. §1983

   This packet includes four copies of a complaint form and two copies of a forma pauperis petition.  To start an action you must file an original and one copy of your complaint for each defendant you name and one copy for the court.  For example, if you name two defendants, you must file the original and three copies of the complaint.  You should also keep an additional copy of the complaint for your own records.  All copies of the complaint must be identical to the original.

   The clerk will not file your complaint unless it conforms to these instructions and to these forms.

-1-

Your complaint must be legibly handwritten or typewritten. The plaintiff or plaintiffs must sign and swear to the complaint. If you need additional space to answer a question, you may use the reverse side of the form or an additional blank page.

Your complaint can be brought in this court only if one or more of the named defendants is located within this district. Further, it is necessary for you to file a separate complaint for each claim that you have unless they are all related to the same incident or issue.

In order for this complaint to be filed, it must be accompanied by the filing fee of $ 120.00. In addition, the United States Marshal will require you to pay the cost of serving the complaint on each of the defendants.

If you are unable to pay the filing fee and service costs for this action, you may petition the court to proceed in forma pauparis. Two blank petitions for this purpose are included in this packet. One copy should be filed with your complaint; the other copy is for your records. After filling in the petition, you must have it notarized by a notary public or other officer authorized to administer an oath.

You will note that you are required to give facts. THIS COMPLAINT SHOULD NOT CONTAIN LEGAL ARGUMENTS OR CITATIONS.

When these forms are completed, mail the original and the copies to the Clerk of the United States District Court for the Southern District of Florida, 301 North Miami Avenue, Miami, Florida 33128-7788.

I. Previous Lawsuits

    A. Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to your imprisonment?
        Yes ( )   No (✓)

    B. If your answer to A is yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

        1. Parties to this previous lawsuit

           Plaintiffs: _____

-2-

Defendants: _____

_____

2. Court (if federal court, name the district; if state court, name the county): _____

_____

3. Docket number: _____

4. Name of judge to whom case was assigned: _____

_____

5. Disposition (for example: Was the case dismissed? Was it appealed? Is it still pending?):

_____

_____

6. Approximate date of filing lawsuit: _____

7. Approximate date of disposition: _____

II. Place of present confinement: Everglades Correctional Institution, PO Box 949000, MIAMI, FL 33194

A. Is there a prisoner grievance procedure in this institution?
Yes (✓)   No ( )

B. Did you present the facts relating to your complaint in the state prisoner grievance procedure?
Yes ( )   No (✓)

C. If your answer is YES:

1. What steps did you take? _____

_____

_____

2. What was the result? _____

_____

-3-

D. If your answer is NO, explain why not: Not Applicable to the subject matter of this complaint.

III. Parties

(In Item A below, place your name in the first blank and place your present address in the second blank. Do the same additional plaintiffs, if any.)

A. Name of plaintiff Anthony Mitchell
   Address P.O. Box 949000-447259. MIAMI, FL 33194

In Item B below, place the full name of the defendant in the first blank, his official position in the second blank, and his place of employment in the third blank. Use Item C for the names, positions, and places of employment of any additional defendants.

B. Defendant Ronald Scott Lowy
   is employed as Attorney at Law; Private
   at 5615 La Gorce Dr. MIAMI BEACH, FL 33140

C. Additional Defendants: _____

IV. Statement of Claim

State here as briefly as possible the facts of your case. Describe how each defendant is involved. Include also the names of other persons involved, dates, and places. Do not

give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheet if necessary.)

Mr. Lowy manipulated the Courts into believing he was withdrawing from my case (F00-14840) due to medical reasons. He claimed in the presence of my former wife Alicia Borges' who retained him, and with Judge Schockett presiding on Judge Dresnick's bench that he was going "inactive status" due to his diabetic condition. This occurred in open-court on October 31, 2000. I was not brought to court until November 1, 2000, and Judge Schockett explained the events of the prior day, arranged for Asst. Public Defender Maritza Alvarez to take over my case, and in light of the delays in my trial, granted me release under the supervision of the Alternate Bond Program. Judge Schockett is "Pro-freedom" of defendant's incarcerated awaiting trial, and in favor of assisting defendant's with substance abuse/alcohol problem by placing them in Treatment Centers while awaiting Trial. Further, at the time Mr. Lowy (See attachments Pages 1 through 7 continued)

V. Relief

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

File a lawsuit against Mr. Ronald Scott Lowy, in his official and

-5-

erroneously misled Judge Schuckett and the courts that his sole reason for withdrawing from my case was because of medical reasons; I was only charged with one felony - Aggravated Battery, and two misdemeanors including simple battery and criminal mischeif - under $1000.00.

Before I go any further into the irrepairable damage Mr. Lowy subjected me to, let me make it clear that on November 3, 2003, I recieved a formal motion to withdraw from Mr. Lowy stating his reasons for withdrawing were solely "Irreconcilable Differences." Ms. Borges paid Mr. Lowy $1000.00 to retain his service. Which he accepted graciously, and said the remainder could be worked out over time. He never gave an exact amount. Once he looked at the case file, he told me "I didn't know you qualify for mandatory prison sentences." He should have been aware because I used his firm in a 1997 Aggravated Assault case in which his partner David,

P.1 of 7

arranged for me to take a year and a day before Judge Lando. Obviously, this qualified me as a potential Prison Re-offender (P.e.R.P.) which would logically qualify me as a Habitual Violent Offender on the basis that I had two violent crimes within a 5 year period, and that I had been released from prison in 1997. (**FLORIDA STATUTES §** 775.082 (2) dealing with Prison release reoffenders, and 775.084 (5) (b) dealing with "Habitual Violent Felony offenders") clearly state that Mr. Mitchell qualifies for both criteria with a 2000 arrest for Aggravated Battery. Thus, we concluded that Mr. Lowy should have known the legal status of Mr. Mitchell, and therefore should not have taken his case in June, 2000 without specifically detailing the cost of his representation. A fair estimate of such a case would be in the neighborhood of $20,000.00 as appraised by Theodore Mastos, esquire. This is a case Mr. Lowy should have graciously ~~turned~~ down. Why did he accept $1,000. for a $20,000. case? One possible explanation lies in the belief by Ms. Borges that Mr.

P. 2 of 7

Lowy was in active addition to some controlled substance. This theory was seconded by an inmate known as "Ice" who stated to Mr. Mitchell in February of 2001, or thereabouts, that Mr. Lowy was one of his clients known to buy crack from him for use with young, female prostitutes. Mr. "Ice" said concerning Mr. Lowy " He has a good mouth-piece, but he often fails to show up to court..." Proof of the legitimacy of these statements were realized by Mr. Mitchell's memory that Mr. Lowy sent an associate to a September 18 court appearance, and failed to show to the next court appearance 6 weeks later, also a Monday, the 30th of October, 2000. Mr. Mitchell was taken into custody on August 28, 2000, a Monday morning three weeks prior to his no show Monday September 18.

Mr. Mitchell, began to panic in February, 2001. A.P.D. Alverez went on to private practice, and an unknown Mr. Qawi Abdul-Rahman was appointed to replace her. Mr. Mitchell filed a

P. 3 of 7

Complaint to the Florida Bar Association at 444 Brickell Avenue - Rivergate Plaza. Four months, Mr. Mitchell heard nothing regarding his complaint that he suspected Mr. Lowy had violated some code of ethics regarding attorney/client relationship. Finally, he recieve word that matter was being forwarded to the review of a "greivance committee". During this time, Mr. Mitchell was brought to trial. This is where the damage began to take effect. Asst. State Attorney Kerri Bennett "NO-ACTION" -ed the misdermeanor Criminal Mischeif charge, and added an additional Felony Charge of "Launching a Deadly Missile". In addition, she flew in an undeposed witness, Ms. Theresa Langley from Dallas, Texas. Overwhelmed by these dramatic changes the day before trial, July 30, 2001, Mr. Mitchell decomp- -ensated and was placed on suicide prevention. On July 31, 2001, Mr. Mitchell was declared Incompetent to proceed, and a mistrial was granted to Mr. Mitchell by motion of Mr. Rahman. Mr. Mitchell was remanded to Chattahoochee - Florida State Hospital for

P. 4 of 7

evaluation. After 5 months Mr. Mitchell became competent to stand trial once again, and was returned to Dade County to face trial. Mr. Rahman moved his practice to Philadephia and Mr. Joel Denaro of the Public Defender's Office took over Mr. Mitchell's case.

On September 3, 2002, Mr. Mitchell stood trial once again. A.S.A. Winters took over the prosecution, and added a third felony charge of Attempted Aggravated Battery and "No-Action"-ed a simple battery, as was similarly the case on July 30, 2001. Each time, the State trumped up the case. There was mention of adding a fourth undeposed witness for the state whose testimony was that she saw Mr. Mitchell barking like a dog from the back of a Miami Beach Police Cruiser. However, when Mr. Denaro threatened to use an insanity defense, the State retracted her testimony. Ultimately, Mr. Mitchell faced 3 felonies on September 3-5, 2002, of which two he was convicted of

P. 5 of 7

lesser included offenses of a misdemeanor calibre, and he was convicted of "Throwing a Missile Into a Dwelling" and sentenced to a 15 year split sentence of 10 years Florida State Prison followed by 5 years probation.

The bottom line is that Mr. Mitchell could have gone to trial October 30 - Nov. 3, 2000, before defense-friendly Honorable Judge Schockett, facing one felony charge of Aggravated Battery in which a jury (two years later) convicted him of misdemeanor battery. The Throwing a Missile Into Dwelling was non-exsistant, and in the form of a misdemeanor criminal mischief charge for the action involving the illegal use of a rock as a weapon. Consequently, the longer Asst. State Attorney Supervisor Bernstein had to devise his schemes of attack against Mr. Mitchell, placing a greater burden on him as a defendant. A defendant can not be convicted of a crime he has not been charged with. For more information on the findings of

P. 6 of 7

the Florida Bar Association, please contact there office headed by Arlene Sankel. Mr. Mitchell spoke to Mr. McCormick of that office who state unofficially that Mr. Lowy did not act in the manners consistent with his profession, and that he had had a past problem with substance abuse that they were aware of, and that he was getting help, and would become "active status" with the Florida Bar sometime after the 2002 year. Mr. Mitchell did suggest to Mr. McCormick that Mr. Lowy could take over his case again once he was reinstated, but Mr. McCormick never returned a call to me at Chattahoochee - Florida State Hospital, nor did Mr. Lowy, and I asked Mr. McCormick to give him the patient phone number.

Had Mr. Lowy not taken my case to begin with, I am confident Ms. Maritza Alverez would have beat the sole felony before Judge Schockett while facing A.S.A. Scholl who is considered to struggle in trial especially with jurors. I'm even more confident Mr. Lowy would have done the same had he went to trial on October 30, 2000. Instead, he abandoned me.